Good morning, Your Honor. May it please the Court. My name is Paula Ferrer and I represent the petitioner Nery Quintanilla-Miranda. This case involves a young man who was abused by his father from the age of four until 14 or 15 years of age, at which time he fled to the United States to escape persecution he suffered from his father. It involves a decision from the Board of Immigration Appeals in which the Board failed to properly analyze several issues in regards to the petitioner's withholding of removal and CAT claim. However, because of our limited time, we would like to highlight two issues that are of grave importance in this case, the first being the petitioner's membership in a particular social group. Our position is that it is a cognizable social group and that the BIA erred in finding otherwise. And second issue, that matter of AB should not be given Chevron deference as it is arbitrary and capricious and inconsistent with prior BIA precedent. The petitioner's membership of a particular social group, as stated in this case, is Honduran sons in a domestic familial relationship who are unable to leave. This group was formulated along the lines of matter of AB. Breyer. The group's definition doesn't have in it the persecution by the father. Ferrer. No, Your Honor. That is our position. And our position is that in matter of AB, which, as the Court knows, overruled matter of ARCG, their focus was that it was a circular definition because the persecution was defined within the social group. However, our position is, one, that is not the case in all social groups involving domestic violence, whether it's a spousal relationship or a child-parent relationship, because an individual's inability to leave a group — Breyer. Your Honor, in their brief, it's not — is not contending that AB is a categorical rule. Ferrer. I'm sorry, Your Honor? Breyer. I don't think it's a point of dispute. Neither of you are arguing that AB is a categorical rule against domestic abuse. Ferrer. And if that is the case, and, Your Honor, that's exactly what the government stated in their brief, and I'm just going to cite to one line in their brief, page 32 of their brief. They say there is no blanket rule that a specific group is or is not cognizable in all cases as long as the factual scenario has not been previously rejected by the board, which is our case. This factual scenario has not been previously rejected by the board, and as long as the group is not circularly defined, which is our argument today. Breyer. But AB is built on MEVG. Ferrer. Correct, Your Honor. And so is — Breyer. And our pre-established circuit law that the group can't — has to be particularized and not overbroad. Ferrer. That's correct. Breyer. And I may be oversimplifying it, but it looked to me like the IJ and the BIA were in agreement that whether you go through the MEVG route or the IJ, essentially you've got a social group here that would apply to all Honduran sons. And that's too overbroad. It's not particular enough. Ferrer. And, Your Honor, if I may take a step back, that kind of leads us into our second issue of Chevron. The issue that we have with matter of AB is that — Breyer. Oh, no, no, no. I'm going to interrupt. I'm saying that's the law with MEVG. It is not an AB clause. That was law before AB. Ferrer. I would — Breyer. I would disagree. Ferrer. I would disagree with you, and I'll tell you why. Because matter of AB overrules ARCG. And ARCG — matter of AB kind of paints ARCG as this idea that DHS or the applicant came to some kind of agreement, agreed to a membership of a particular social group, and basically the BIA just rubber-stamped it. Our position is that that was not the case. If the Court carefully analyzes the decision of ARCG, the Board, in fact, goes through the MEVG requirements and decides that, unable to leave a relationship — in that case, it was a Guatemalan married woman — that that, in fact, is immutable characteristic, that it is particular, and that it is socially distinct. And the interesting case — the interesting thing about the MEVG case is that MEVG actually comes from a similar Chevron issue. Breyer. I'm just not seeing why the Chevron deference to AB is even implicated in this case. Because if the issue is all children are dependent on their parents financially or whatever, it's hard to leave your parents. Why aren't we just affirming on that basis? Because that's not particularized. That's every kid in Honduras. Well, Your Honor, the particularity requirement is not necessarily about whether it's every kid. It's just that it would be stated within — No, but the particularity means they wouldn't recognize it as a distinct social group because it's everyone, plus it's overbroad because it's everyone. Right. And so the socially distinct argument, if we go back again to ARCG, which is what this case was based on and what the argument was made at the immigration judge level, then matter of AB happened while the BIA case was pending. So that's another complicating issue. But ARCG actually looks at social distinction on that same unable-to-depart MPSG and states that it is socially distinct because the country, in that case Guatemala, has set up several organizations to help women of domestic violence. In other words, Guatemala has found that there is a group in need of protection in this country and thus has determined that it is socially distinct. But I don't see that for all children in a country. So in our case, Your Honor, the record does reflect, and we submitted country reports, that child abuse is prevalent in an issue in Honduras, the country issue in our case, and that the government has actually done several surveys to find out, you know, how many children have been maltreated and harmed by child abuse. And there's a group called Casa Alonza, which is on 214, page 214 of the record, Your Honor, one of the country reports that we submitted with the original trial, that this children's rights organization, Casa Alonza, reported homicides of 147 children, and in 80 percent of those cases there was no arrest. I mean, clearly Honduras is aware of child abuse in the same context that ARCG found that Guatemala was aware of this prevalent issue of domestic violence, and that's our position today in regards to MPSG. And as far as Chevron, Your Honor, I'd like to mention also that in MEVG, which I think everyone agrees is precedent for finding social group, in that case, the procedural history of that case is that it actually went up to the Third Circuit for determining whether social visibility, which at that time was the test, was a proper test under precedent law. And the Third Circuit in that case found that it was not, that under Chevron it did not muster deference and sent it back down to the BIA. And then the BIA came out with the opinion that we now know as MEVG. That same issue came in front of this Court in the Orellana case, where this Court had to determine whether social visibility test should have mustered Chevron deference or not. And in this case, and in this Court, the Court found that it did muster Chevron deference. And, but I would like to point the Court to the position or the standard used in that case, because I believe it's important for the case at hand. In Orellana, the Court found, this Court found, that the social visibility test is not a radical departure from prior interpretation, but rather it was a subtle shift that evolved out of BIA's prior decisions. In this case at hand, what the Attorney General has done with matter of AB is not a subtle shift. Matter of AB is a radical departure from previous BIA precedent that has stated and found that domestic violence or, to be specific, the MPSG of unable to depart a relationship is a cognizable social group based on MEVG. Matter of AB comes and completely, and completely turns ARCG on its head in that case. So we would ask the Court to find, as its reasoning was in Orellana, that in this case it is a radical departure from prior interpretation. And under Chevron, we — our position is that matter of AB is arbitrary and capricious, and it is a sweeping, sweeping violation of the fundamental principle that there are narrow exceptions to agencies such as the Board of Immigration Appeals and their or the Attorney General ability to legislate within the government's separation of powers framework. The other issues that I think are important here when we look at matter of AB is that it's not just an issue in regards to domestic violence. It also heightens the standard for the government protection. The standard has always been or has recently been unable and unwilling to control the government. The Petitioner must show that the government was unable or unwilling to control the persecutor. And yet here in matter of AB, now we must show that the government condoned the private actions or at least demonstrated a complete helplessness, which is a much heightened standard than what was set prior to matter of AB. But the BIA didn't even reach the issue of past persecution here. That's correct. That's correct, Your Honor. The BIA simply said because of matter of AB, this case does not muster social group recognition. And if the Court were to find that matter of AB is proper and that it does muster deference under Chevron, then we would ask the Court to look at the specific facts of this case in which we have a child that his inability to leave has nothing to do with the persecution, which is what the BIA seemed to think in their opinion, that because of the risk of persecution, because it was defined by persecution, that's not the case here. We have a child whose inability to leave was based on the fact that he is dependent on his father, that he has adult supervision, that he depends on food and shelter from his parents. Also, the society, the norms in society that determine that children should be home with their parents. So this is a kid who began being abused at four years of age and departed, fled at 14 or 15 years of age, spent at least 10 years of his life being abused by his father. And I won't go into the details, but Your Honors can look at the record to look at the type of abuse that was committed. But the issue here is that this is very different from your typical domestic father and spousal, domestic partner relationship. This is a child who had no ability to leave the relationship, and that definition had nothing to do with the persecution in and of itself. He was persecuted because of that. But his inability to leave had nothing to do with the fact that he was being persecuted. It had to do with the fact that he was a child, that he was four, five, six, seven years of age and was unable to leave that relationship. But isn't this court just to look at what the BIA's rationale was? That's correct. Yes, Your Honor. And, unfortunately, the BIA basically gives us a one-page decision saying, based on a matter of AB, we find that this is a circular definition of social group, and because of the risk of persecution that's defined in this social group, it's what they allege, we're going to hereby deny and say that there was no cognizable social group. They don't look at any other issues except the voluntary departure issue. So it's hard for us to... And, in turn, it absolutely reiterates the MEVG standard. So it may be you're right as to the circularity point, AB is distinguishable, but it wouldn't mean that AB isn't applicable in the non-radical innovative way in as much as it's just reiterating fundamental BIA law that we've multiple times applied in, as you said, Orlano and what's the other case being cited? Hernandez. Correct, Your Honor. And I think that's why... So AB isn't just a single pillar. So to the extent the BIAs disagree with me, if you think I'm wrong, but to the extent the BIA recited it, it's embracing the very law the IJ applied to. This is overbroad. It's not particular. The IJ found it based on the social distinction, Your Honor. For me? Not the particularity of the social distinction, I think, was the issue at the IJ level in regards to that social group. But if I could, the same MEVG, again, was looked at in ARCG. And in that same scenario of unable to depart, ARCG found that, yes, MEVG was proper and that social group had particularity, it was socially distinct, and it had innate characteristics defined within it. And so now here comes the Attorney General and says, wait, no, that's not what I want. We're going to switch this around, and puts us in a predicament where we have BIA precedent that has been analyzed based on MEVG finding that this is proper, and now we have a matter of AB saying it's not. Very simply for me, why isn't the common theme throughout, is it overbroad? And you haven't convinced me why all children, being wards of their parents, isn't an overbroad group. And that remains good law. The IJ applied it. The BIA applied it. It's there. It was undisturbed by AB. What's the answer? The answer is that the standard is not overbroad. It's particularity, which says that it can be a large group. It just cannot be overbroad. Here we have kinship ties. We have a son. We have nationality. We have Honduran. Why would it apply to sons and not daughters? We have gender, male. These are particular things that it's not just children. Our social group was not children. It's not children that live in households in which they're persecuted. That's not the social group. The social group is Honduran sons in a domestic-familial relationship that they are unable to leave. There are several particular elements, which, again, in ARCG, the Court found that it was particular, that Guatemalan women unable to leave their husbands was particular because they said Guatemalan was very particular and defined. Married was defined. Woman was defined. And unable to leave was defined. What percent of male children in Honduras would that description capture? I'm not aware of percentages, Your Honor. Honduran sons in a domestic-familial relationship who are unable to leave. I just have no sense of how broad that group is. Again, our position is that it's not broad because each of the elements within that social group are particularly defined, which is what MEVG states. Every son would have difficulty leaving financially. Exactly. I agree. So it's pretty darn broad. It's everywhere. But it's limited to Honduran sons, gender, kinship, ties, nationality. Thank you, Your Honor. May it please the Court. I'm Scott Stewart on behalf of the Attorney General. In this case, the Board of Immigration Appeals concluded that Petitioner Neri Quintanilla Miranda's proposed social group, Honduran sons in domestic-family relationships who are unable to leave, is not cognizable as a matter of law. The Board therefore held that Petitioner is ineligible for withholding of removal. The Board's ruling is correct. This Court should deny the petition for review on that claim, and the Court should dismiss the petition as to the remaining claims. I think, as Judge Higginson was suggesting, matter of AB is a decision that overwhelmingly synthesizes, clarifies, and collects existing well-established, well-reasoned agency law interpreting ambiguous and ambiguous provisions of the asylum law and just all of those elements of asylum and withholding claims, Your Honors. There was — it did overrule a matter of ARCG. It gave very good reasons for doing that. A matter of ARCG rested on concessions. It purported to apply MEVG, but without undergoing the rigorous analysis that you need to do that. Instead, it relied on party concessions. It hit all those points, and it really drilled down, matter of AB did, Your Honors, on cognizability and the need to define a social group, a particular social group, in a way that is not circular, that's independent of the persecution so that you can make sure that — Let me just stop you there. This one does seem to me to be independent of persecution. It doesn't really implicate circularity since they didn't build into their description the father's persecution. So that part of AB that to me is more innovative and perhaps entitled to deference, just maybe an issue for another day. This issue wouldn't really fit into that correction. But disagree. I think this is just straight MEVG, AB reiterating the law, it's a law we've had, that it's an overbroad group, every son with a father. Do you agree or not? I think this decision does reflect a solid application of MEVG, Your Honor. I would say that the Board here did rest on AB and the rejection as a matter of law of an unable-to-leave type of claim. And it did that because — and this is at pages 334 to 335 of matter of AB, where the Court says, look, when you have these unable-to-leave opinions, you have a situation where you are baking in the persecution in some sense. Because certainly in a great many of these cases, the reason people are unable to leave is the harm feared. That's why we need to be really, really careful in delineating and precisely defining these social groups so that we can make sure, Your Honor, that they have the particularity, so that they have the social distinction. So I do think there is the circularity problem. I do think the BIA was reasonable and correct in recognizing that and in rejecting this claim as a matter of law. I think, as we said in our brief, if you get to issues of particularity and social distinction, there are also — the decision is well-supported in light of those principles as well. Stop there. It's well-supported in light of the principles, but did the BIA's decision itself articulate enough by citing AB that we have the authority to affirm on that ground? Your Honor, I think it really is a holding as a matter of law. I mean, the Court does — does say — this is at ROA 7 to 8. You know, upon de novo review, we conclude that there is an insufficient reason to disturb the IJ's decision. I think what it's really getting at is a legal determination, and what we have here is this circularly defined social group. And I think that's what the Court should hew to. And — What if we disagree with that? Do you still win? I think it is — I think, as we've said in our briefs, Your Honor, there's still a substantial evidence basis to uphold the decision, but I do think that legal determination is the soundest ground. The Board does go on to say, you know, later in the paragraph, look, moreover, the Attorney General held that social groups defined by private criminality likely lack the particularity. And I think the Court can understand that there was some support for the more fact-driven determination that the IJ made. But I think the cleanest and clearest and solid legal ground, Your Honor, and the one that is supported by the well-reasoned decision in AB itself, is that — is the analysis that appears at pages 334 to 335 of the decision, the pages that the Board here relied on in particular, where it said, look, these unable-to-leave social groups, these groups that are defined by the harm have this circularity problem that leads to other problems here. That's the best and cleanest and, I think, correct way to deny the petition, Your Honor. Just briefly, I'd note, Your Honor, I think matter of AB does this well. But I think the rules laid down or the principles laid down and embodied in the Attorney General's decision are quite reasonable. I think most of them are not really implicated here. As Judge Brown, I think, pointed out, certain things are just not things that the BIA relied on or reached. We've noted some of those in our footnote. They're not really properly at issue here. But as this Court's recognized in Oriana Monson and in Hernandez-Delacruz, I believe, this is an area where, in defining a particular social group, the BIA and the Attorney General are interpreting a very ambiguous term where they have ample authority and ability to reasonably define things. The principles here embodied in MEVG are a correct and faithful application of MEVG. They correctly explain and reject the problems with ARCG. And AB's principles were correctly applied here in rejecting the withholding claim as a matter of law. I'd note, finally, Your Honor, I don't think my friend got to it. But on the other two claims, I won't expand much on our briefing. But I — Roberts. Before you get to those, I just want to be clear. Your position is that AB doesn't create a categorical denial of asylum claims involving domestic violence, right? That's correct. That's correct, Your Honor. I think AB says, and my friend did point out our brief at page 32 where we explain the language. There's no blanket rule that a specific group is carved out unless we have, you know, a factual scenario that the Board has previously rejected, the same factual scenario, or the group is circularly defined and is just, as here, kind of flawed and uncognizable at — or noncognizable at the outset. I think what the Attorney General was recognizing, Your Honor, was that, look, when you get to some of these personal violence claims, private violence claims, government not directly involved claims, it just — in practice, it's really hard to satisfy the requirements for persecution, government involvement, those kinds of things. It's, I think, what this Court and the Supreme Court does, you know, quite often where, in addition to laying out the legal requirements, the Court just recognizes, look, this is how this is going to look in practice. This is just a nice, plain-language, clean way of explaining how the principles are going to likely shake out in everyday application. But the Attorney General did emphasize, Your Honor, look, we analyze these by their facts. I want immigration judges in the Board to carefully go through the requirements. We need a rigorous analysis. Instead of what we saw in the wake of ARCG where courts were saying, oh, well, this is a similar group to ARCG, therefore cognizable. You need to go through that careful analysis. So we don't have a categorical bar, Your Honor, with that qualification that we mentioned at 32 — those qualifications at page 32 of our brief. Her group definition turns on the Department of State's finding of child abuse as sort of particularly acute and creating a social group. And your response to that implied that that citation of hers related to indigenous people. Do you remember that portion of your brief? Right, Your Honor. I think — Is that a correct citation of yours? My apologies on that, Your Honor. I think we might have had a confusion between the ROA cites and the administrative record AR cites. It is that. It's a teeny little point, but I'm sort of particular, no pun intended. If you knew that coming in, you do want to just send us a note saying, I made a record miscite, because that's a fairly central point they're making factually. I apologize, Your Honor. I actually realized when I was sitting here. Oh. I made the connection. And anyway, because we didn't see, you know, reply briefly. Right. So anyway, thank you for pointing it out, Your Honor, but I did realize it when I was sitting there. And that's ROA 214. And what I would say there, Your Honor, is that on child abuse, what the country report says is that it remained a serious problem. It abandoned, you know, a few hundred cases. There are prison sentences for up to three years for child abuse. And it hits some other things. I don't think it gets to the really rigorous thing you need to do to show a particular socially distinct group, though. So thank you for flagging that, though, Your Honor. Finally, Your Honor, I don't — given that it hasn't been covered by my friend, I'm fine with noting that on the CAT claims, on the voluntary departure claims, we would just stick with our view that there's no jurisdiction and those should  Thank you, Mr. Stewart. Thank you, Your Honor. Thank you, Your Honor. I think the issue that we have with the government's position, Your Honor, is that they state that it's not an overbroad blanket rule denying domestic violence, mater vebi is. But yet on the day that mater vebi is adjudicated, that same day, we have a USCIS policy manual instructing asylum officers to deny credible fear findings based on domestic violence or gang persecution. So it's hard to see what the government's position actually is. Has it changed? What is it today? And I think the issue before this Court is that both adjudicators, immigration judges and BIA are looking to the courts to see what does mater vebi actually mean and will the court find that it musters Chevron deference because Those are very large issues. You're litigating a particular young man's case. You really want us to adjudicate the correctness of AB in this case. Yes. That's why we're here. Okay. Well, you've made the arguments. Thank you. I have no more questions. I'll rest. Thank you.